# EXHIBIT A:

# STATE COURT COMPLAINT

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>7325 S. Potomac Street<br>Centennial, Colorado 80112 | DATE FILED<br>December 30, 2024 11:44 AM<br>FILING ID: B45087F355341<br>CASE NUMBER: 2024CV32817 |
| KIMBERLY GIBSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONCEPTIONS REPRODUCTIVE ASSOCIATES, INC. and IVI AMERICA, LLC.,<br><br>Defendants. | **COURT USE ONLY** |
| Sommer D. Luther (#35053)<br>**WAGSTAFF LAW FIRM**<br>940 Lincoln Street<br>Denver, Colorado 80203<br>Telephone: (720) 208-9417<br>Email: sluther@wagstafflawfirm.com<br>***Counsel for Plaintiff and the Proposed Class***<br><br>Raina C. Borrelli (*to be admitted pro hac vice*)<br>**STRAUSS BORRELLI PLLC**<br>One Magnificent Mile<br>980 N Michigan Avenue, Suite 1610<br>Chicago IL, 60611<br>Telephone: (872) 263-1100<br>Facsimile: (872) 263-1109<br>raina@straussborrelli.com<br>***Counsel for Plaintiff and the Proposed Class*** | Case No.:<br><br>Div.: |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Kimberly Gibson ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Conceptions Reproductive Associates, Inc. and IVI America, LLC ("Conceptions Reproductive Associates" or "Defendants"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1.     This class action arises from Defendants' failure to protect highly sensitive data.

2.     Defendant Conceptions Reproductive Associates, Inc. is a healthcare provider with four locations in Colorado.[1]

3.     On information and belief, Conceptions Reproductive Associates, Inc. is wholly owned and operated by Defendant IVI America, LLC.

4.     As such, Defendants stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about their current and former patients. But Defendants lost control over that data when cybercriminals infiltrated their insufficiently protected computer systems in a data breach (the "Data Breach").

5.     It is unknown for precisely how long the cybercriminals had access to Defendants' network before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals unrestricted access to their current and former patients' PII/PHI.

---

[1] *About Us*, CONCEPTIONS REPRODUCTIVE, https://www.conceptionsrepro.com/about-us/ (last visited Dec. 26, 2024).

6.    On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendants' failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

7.    Plaintiff is a Data Breach victim, having received a breach notice. She brings this class action on behalf of herself, and all others harmed by Defendants' misconduct.

8.    The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before this data breach, their current and former patients' private information was exactly that— private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

9.    Plaintiff, Kimberly Gibson, is a natural person and citizen of Colorado where she intends to remain.

10.    Defendant, Conceptions Reproductive Associates, Inc., is a corporation incorporated in Colorado and with its principal place of business at 271 W County Line Road, Littleton, Colorado 80129.

11.    Defendant, IVI America, LLC, is a limited liability company formed under the laws of Delaware and with its principal place of business at 140 Allen Road, Basking Ridge, New Jersey 07920.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to Article VI, Section 9 of the Colorado Constitution.

13.    This Court has personal jurisdiction over Defendants under C.R.S. Section 13-1-

124(1)(a), (b), and/or (c). Specifically, this Court has general personal jurisdiction because Defendants maintain their principal office and place of business in this County, and regularly conduct business in this County.

14.    Venue is proper in this County under C.R.C.P. 98(c) because Defendants reside in this County.

## BACKGROUND

*Defendants Collected and Stored the PII/PHI of Plaintiff and the Class*

15.    Defendant Conceptions Reproductive Associates, Inc. is a healthcare provider with four locations in Colorado.[2]

16.    As part of their business, Defendants receive and maintain the PII/PHI of thousands of their current and former patients.

17.    In collecting and maintaining the PII/PHI, Defendants agreed it would safeguard the data in accordance with their internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII/PHI.

18.    Under state and federal law, businesses like Defendants have duties to protect their current and former patients' PII/PHI and to notify them about breaches.

19.    Defendants recognize these duties as evidenced by their "Privacy Policy." An archived copy from June 12, 2024, promises that:

a.    "We take precautions to protect your information."[3]

---

[2] *About Us*, CONCEPTIONS REPRODUCTIVE, https://www.conceptionsrepro.com/about-us/ (last visited Dec. 26, 2024).
[3] *Privacy Policy*, CONCEPTIONS REPRODUCTIVE, (June 12, 2024)
https://web.archive.org/web/20240612235151/https://www.conceptionsrepro.com/privacy-policy/.

b.    "When you submit sensitive information via the website, your information is protected both online and offline."[4]

c.    "Wherever we collect sensitive information (such as credit card data), that information is encrypted and transmitted to us in a secure way."[5]

d.    "While we use encryption to protect sensitive information transmitted online, we also protect your information offline."[6]

e.    "Only employees who need the information to perform a specific job (for example, billing or customer service) are granted access to personally identifiable information."[7]

f.    "The computers/servers in which we store personally identifiable information are kept in a secure environment."[8]

***Defendants' Data Breach***

20.    On mid-April 2024, Defendants realized that it was hacked in the Data Breach.[9]

21.    Worryingly, Defendants already admitted that "legacy computer systems were affected by an unauthorized intrusion earlier that month, in which attackers extracted certain patient information."[10]

22.    Because of Defendants' Data Breach, at least the following types of PII/PHI were compromised:

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Notice of Data Security Incident*, CLASS ACTIONS.ORG (Dec. 4, 2024)
https://www.classaction.org/media/conceptions-reproductive-associates-online-notice.pdf.
[10] *Id.*

    a.      patient identifiers (e.g., name, date of birth, home address, phone number, etc.);

    b.      clinical data (e.g., tests ordered, test results, vital signs, physical examination findings, diagnostic imaging, etc.);

    c.      Social Security numbers;

    d.      driver's license numbers;

    e.      government issued identification numbers;

    f.      checking account numbers;

    g.      credit card numbers; and

    h.      debit card numbers.[11]

23. In total, Defendants injured at least 80,000 persons—via the exposure of their PII/PHI—in the Data Breach. Upon information and belief, these 80,000 persons include their current and former patients.

24. And yet, Defendants waited over until December 2024 before it began notifying the class.

25. Thus, Defendants kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

26. And when Defendants did notify Plaintiff and the Class of the Data Breach, Defendants acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft.

27. Defendants failed their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the

---

[11] *Id.*

Data Breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendants caused widespread injury and monetary damages.

28.     Since the breach, Defendants has "has taken steps to further strengthen the security of its systems[.]"[12] But such simple declarations are insufficient to ensure that Plaintiff's and Class Members' PII/PHI will be protected from additional exposure in a subsequent data breach.

29.     Further, the Notice of Data Breach shows that Defendants cannot—or will not—determine the full scope of the Data Breach, as Defendants has been unable to determine precisely what information was stolen and when.

30.     Defendants has done little to remedy their Data Breach. True, Defendants has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class Members for the injuries that Defendants inflicted upon them.

31.     Because of Defendants' Data Breach, the sensitive PII/PHI of Plaintiff and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

32.     Worryingly, the cybercriminals that obtained Plaintiff's and Class Members' PII/PHI appear to be the notorious cybercriminal group "Inc. Ransom."[13] To make matters worse, Inc. Ransom *already leaked* the stolen PII/PHI on the Dark Web.[14] As reproduced below, a screenshot of Inc. Ransom's Dark Web webpage confirms that "ALL data" was leaked on April 29, 2024—such that other cybercriminals can now "View" the stolen PII/PHI.[15]

---

[12] *Id.*
[13] *Hacks of Today*, HACKMANAC (February 5, 2024) https://hackmanac.com/news/hacks-of-today-02-05-2024.
[14] *Id.*
[15] *Id.*

33.    Still, despite this public evidence of broad misuse, Defendants misleadingly claim that "The Practice's ongoing monitoring efforts have found no indication that any of the data has been used or further disclosed for purposes of identity theft, fraud[.]"[16]

34.    Thus, on information and belief, Plaintiff's and the Class's stolen PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

*Plaintiff's Experiences and Injuries*

35.    Plaintiff Kimberly Gibson is a former patient of Defendant, having used its services in 2022 and 2023.

36.    Thus, Defendants obtained and maintained Plaintiff's PII/PHI.

37.    As a result, Plaintiff was injured by Defendants' Data Breach.

38.    Plaintiff provided her PII/PHI to Defendants and trusted the company would use reasonable measures to protect it according to Defendants' internal policies, as well as state and

---

[16] *Notice of Data Security Incident*, CLASS ACTIONS.ORG (Dec. 4, 2024) https://www.classaction.org/media/conceptions-reproductive-associates-online-notice.pdf.

federal law. Defendants obtained and continues to maintain Plaintiff's PII/PHI and has a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

39.     Plaintiff reasonably understood that a portion of the funds paid to Defendants would be used to pay for adequate cybersecurity and protection of PII/PHI.

40.     Plaintiff does not recall ever learning that her information was compromised in a data breach incident—other than the breach at issue here.

41.     Plaintiff received a Notice of Data Breach in December 2024.

42.     Thus, on information and belief, Plaintiff's PII/PHI has already been published— or will be published imminently—by cybercriminals on the Dark Web.

43.     Through their Data Breach, Defendants compromised Plaintiff's PII/PHI.

44.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring her accounts to protect herself from identity theft. After all, Defendants directed Plaintiff to take those steps in their breach notice.

45.     And in the aftermath of the Data Breach, Plaintiff has suffered from a spike in spam and scam text messages.

46.     Plaintiff fears for her personal financial security and worries about what information was exposed in the Data Breach.

47.     Because of Defendants' Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

48.     Plaintiff suffered actual injury from the exposure and theft of her PII/PHI—which violates her rights to privacy.

49.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendants was required to adequately protect.

50.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants' Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

51.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

52.     Today, Plaintiff has a continuing interest in ensuring that her PII/PHI—which, upon information and belief, remains backed up in Defendants' possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

53.     Because of Defendants' failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

    a.     loss of the opportunity to control how their PII/PHI is used;

    b.     diminution in value of their PII/PHI;

    c.     compromise and continuing publication of their PII/PHI;

    d.     out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.      lost opportunity costs and wages from spending time trying to mitigate the

fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting,

and recovering from identify theft and fraud;

f.      delay in receipt of tax refund monies;

g.      unauthorized use of their stolen PII/PHI; and

h.      continued risk to their PII/PHI—which remains in Defendants'

possession—and is thus as risk for futures breaches so long as Defendants

fails to take appropriate measures to protect the PII/PHI.

54.      Stolen PII/PHI is one of the most valuable commodities on the criminal information

black market. According to Experian, a credit-monitoring service, stolen PII/PHI can be worth up

to $1,000.00 depending on the type of information obtained.

55.      The value of Plaintiff and Class's PII/PHI on the black market is considerable.

Stolen PII/PHI trades on the black market for years. And criminals frequently post and sell stolen

information openly and directly on the "Dark Web"—further exposing the information.

56.      It can take victims years to discover such identity theft and fraud. This gives

criminals plenty of time to sell the PII/PHI far and wide.

57.      One way that criminals profit from stolen PII/PHI is by creating comprehensive

dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and

comprehensive. Criminals create them by cross-referencing and combining two sources of data—

first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone

numbers, emails, addresses, etc.).

58.      The development of "Fullz" packages means that the PII/PHI exposed in the Data

Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

59.     In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen PII/PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

60.     Defendants disclosed the PII/PHI of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII/PHI of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII/PHI.

61.     Defendants' failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendants Knew—Or Should Have Known—of the Risk of a Data Breach***

62.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

63.     In 2021, a record 1,862 data breaches occurred, exposing approximately

293,927,708 sensitive records—a 68% increase from 2020.[17] Of the 1,862 recorded data breaches, 330 of them, or 17.7% were in the medical or healthcare industry.[18] Those 330 reported breaches exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[19]

64.    Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[20]

65.    In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[21]

66.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

***Defendants Failed to Follow FTC Guidelines***

67.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines

---

[17] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.

[18] *Id.*

[19] *Id.*

[20] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[21] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Sept. 11, 2023).

identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

68.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[22]  The FTC declared that, *inter alia*, businesses must:

    a.    protect the personal customer information that they keep;

    b.    properly dispose of personal information that is no longer needed;

    c.    encrypt information stored on computer networks;

    d.    understand their network's vulnerabilities; and

    e.    implement policies to correct security problems.

69.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

70.    Furthermore, the FTC explains that companies must:

    a.    not maintain information longer than is needed to authorize a transaction;

    b.    limit access to sensitive data;

    c.    require complex passwords to be used on networks;

    d.    use industry-tested methods for security;

    e.    monitor for suspicious activity on the network; and

    f.    verify that third-party service providers use reasonable security measures.

71.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and

---

[22] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

appropriate measures to protect against unauthorized access to confidential consumer data—as an

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15

U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take

to meet their data security obligations.

72.     In short, Defendants' failure to use reasonable and appropriate measures to protect

against unauthorized access to their current and former patients' data constitutes an unfair act or

practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

73.     Several best practices have been identified that—at a *minimum*—should be

implemented by businesses like Defendants. These industry standards include: educating all

employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-

malware software; encryption (making data unreadable without a key); multi-factor authentication;

backup data; and limiting which employees can access sensitive data.

74.     Other industry standard best practices include: installing appropriate malware

detection software; monitoring and limiting the network ports; protecting web browsers and email

management systems; setting up network systems such as firewalls, switches, and routers;

monitoring and protection of physical security systems; protection against any possible

communication system; and training staff regarding critical points.

75.     Upon information and belief, Defendants failed to implement industry-standard

cybersecurity measures, including failing to meet the minimum standards of both the NIST

Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02,

PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01,

PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04)

and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

76.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

***Defendants Violated HIPAA***

77.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[23]

78.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII/PHI and PHI is properly maintained.[24]

79.    The Data Breach itself resulted from a combination of inadequacies showing Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

      a.    failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

---

[23] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[24] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

b.  failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.  failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.  failing to ensure compliance with HIPAA security standards by Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.  failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.  failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.    failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

80.    Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

81.    Plaintiff brings this class action under Colorado Rule of Civil Procedure 23(a) and 23(b)(2)–(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach discovered by Conceptions Reproductive Associates in April 2024, including all those individuals who received notice of the breach.

82.    Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants has a controlling interest, any Defendants officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

83.    Plaintiff reserves the right to amend the class definition.

84.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

85.    <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control. After all, Defendants already identified some individuals and sent them data breach notices.

86.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 80,000 members.

87.    <u>Typicality</u>. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

88.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

89.    <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a.    if Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII/PHI;

b.    if Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    if Defendants were negligent in maintaining, protecting, and securing PII/PHI;

d.    if Defendants breached contract promises to safeguard Plaintiff and the Class's PII/PHI;

e.    if Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

f.    if Defendants' Breach Notice was reasonable;

g.    if the Data Breach caused Plaintiff and the Class injuries;

h.    what the proper damages measure is; and

i.    if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

90.    <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

91.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

92.    Plaintiff and the Class (or their third-party agents) entrusted their PII/PHI to Defendants on the premise and with the understanding that Defendants would safeguard their

20

PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

93.    Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

94.    Defendants has full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

95.    Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices. After all, Defendants actively sought and obtained Plaintiff and Class Members' PII/PHI.

96.    Defendants owed—to Plaintiff and Class Members—at least the following duties to:

    a.    exercise reasonable care in handling and using the PII/PHI in their care and custody;

    b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

    c.    promptly detect attempts at unauthorized access;

    d.    notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII/PHI.

97.    Thus, Defendants owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required

and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

98.    Defendants also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

99.    Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

100.    Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class (or their third-party agents) entrusted Defendants with their confidential PII/PHI, a necessary part of obtaining services from Defendants.

101.    The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendants hold vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII/PHI —whether by malware or otherwise.

102.    PII/PHI is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

103.    Defendants improperly and inadequately safeguarded the PII/PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

104. Defendants breached these duties as evidenced by the Data Breach.

105. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII/PHI by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

106. Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII/PHI of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

107. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

108. Defendants has admitted that the PII/PHI of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

109. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

110. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

111.    Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost benefit of their bargain, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

112.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

113.    Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII/PHI.

114.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the Class Members' sensitive PII/PHI.

115.    Defendants breached their respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

116.    Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and

amount of PII/PHI Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

117.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

118.    But for Defendants' wrongful and negligent breach of their duties owed, Plaintiff and Class Members would not have been injured.

119.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants was failing to meet their duties and that their breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

120.    Similarly, under HIPAA, Defendants had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class Members' PHI.

121.    Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of PHI that Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

122.    Defendants' various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

123.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

124.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

125.    Plaintiff and Class Members (or their third-party agents) were required to provide their PII/PHI to Defendants as a condition of receiving medical services provided by Defendants. Plaintiff and Class Members (or their third-party agents) provided their PII/PHI to Defendants or their third-party agents in exchange for Defendants' medical services.

126.    Plaintiff and Class Members (or their third-party agents) reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

127.    Plaintiff and Class Members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

128.    Plaintiff and the Class Members (or their third-party agents) accepted Defendants' offers by disclosing their PII/PHI to Defendants or their third-party agents in exchange for medical services.

129.    In turn, and through internal policies, Defendants agreed to protect and not disclose the PII/PHI to unauthorized persons.

130.    In their Privacy Policy, Defendants represented that they had a legal duty to protect Plaintiff's and Class Member's PII/PHI.

131.     Implicit in the parties' agreement was that Defendants would provide Plaintiff and Class Members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

132.     After all, Plaintiff and Class Members (or their third-party agents) would not have entrusted their PII/PHI to Defendants (or their third-party agents) in the absence of such an agreement with Defendants.

133.     Plaintiff and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendants.

134.     The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to their form.

135.     Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

136.     Defendants materially breached the contracts it entered with Plaintiff and Class Members (or their third-party agents) by:

a.     failing to safeguard their information;

b.     failing to notify them promptly of the intrusion into their computer systems that compromised such information.

c.     failing to comply with industry standards;

    d.      failing to comply with the legal obligations necessarily incorporated into the agreements; and

    e.      failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendants created, received, maintained, and transmitted.

137.    In these and other ways, Defendants violated their duty of good faith and fair dealing.

138.    Defendants' material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

139.    And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

140.    Plaintiff and Class Members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendants' conduct.

**FOURTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

141.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

142.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

143.    Defendants owed a duty to their current and former patients, including Plaintiff and the Class, to keep this information confidential.

144.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' PII/PHI is highly offensive to a reasonable person.

145.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendants, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

146.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

147.    Defendants acted with a knowing state of mind when it permitted the Data Breach because it knew their information security practices were inadequate.

148.    Defendants acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

149.    Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

150.    As a proximate result of Defendants' acts and omissions, the private and sensitive PII/PHI of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

151.    And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

152. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII/PHI are still maintained by Defendants with their inadequate cybersecurity system and policies.

153. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII/PHI of Plaintiff and the Class.

154. In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

155. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

156. This claim is pleaded in the alternative to the breach of implied contract claim.

157. Plaintiff and Class Members (or their third-party agents) conferred a benefit upon Defendants. After all, Defendants benefitted from (1) using their PII/PHI to provide services, and (2) accepting payment.

158. Defendants appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

159. Plaintiff and Class Members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were

required to provide based on Defendants' duties under state and federal law and their internal policies.

160.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII/PHI.

161.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

162.    Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and Class Members' (1) PII/PHI and (2) payment because Defendants failed to adequately protect their PII/PHI.

163.    Plaintiff and Class Members have no adequate remedy at law.

164.    Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of their misconduct.

**SIXTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

165.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

166.    Given the relationship between Defendants and Plaintiff and Class Members, where Defendants became guardian of Plaintiff's and Class Members' PII/PHI, Defendants became a fiduciary by their undertaking and guardianship of the PII/PHI, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff and Class Members' PII/PHI; (2) to timely

notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

167.     Defendants has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendants' relationship with them—especially to secure their PII/PHI.

168.     Because of the highly sensitive nature of the PII/PHI, Plaintiff and Class Members (or their third-party agents) would not have entrusted Defendants, or anyone in Defendants' position, to retain their PII/PHI had they known the reality of Defendants' inadequate data security practices.

169.     Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' PII/PHI.

170.     Defendants also breached their fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

171.     As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendants and that the Court enter an order:

A.     Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B.      Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.      Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.      Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E.      Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

F.      Awarding attorneys' fees and costs, as allowed by law;

G.      Awarding prejudgment and post-judgment interest, as provided by law;

H.      Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I.      Granting other relief that this Court finds appropriate.


**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Date: December 30, 2024

Respectfully submitted,

By: */s/Sommer D. Luther*
Sommer D. Luther (#35053)
**WAGSTAFF LAW FIRM**
940 Lincoln Street
Denver, Colorado 80203
Telephone: (720) 208-9417
sluther@wagstafflawfirm.com

Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
raina@straussborrelli.com

*Pro hac vice forthcoming*
*Attorneys for Plaintiff and Proposed Class*